## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

DAVID JERMAINE ZENO               CIVIL ACTION NO. 12-CV-2004

VERSUS                            JUDGE DOHERTY

COMMISSIONER,                     MAGISTRATE JUDGE HANNA
SOCIAL SECURITY


## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the decision of the Commissioner be affirmed.


## Background

The claimant David Jermaine Zeno (DOB 8/21/89) applied for Social

Security Disability benefits under Title XVI on February 5, 2010 and March 9,

2010. [Tr. 125-130[1]]  He alleged disability beginning at age 16 due to a seizure

disorder, essential hypertension, and brain damage. [Tr.  53] Zeno alleges an

inability to function and/or work as of September 7, 2005. His application for

benefits was denied on April 5, 2010. [Tr. 60-63]   He requested a hearing on

_____

[1]The administrative record and the transcript of the administrative hearing are made a part
of the record at Rec. Doc. 7-1.  Pages are numbered at the bottom right corner, and transcript
references will be made in this document as Tr. ___.

April 27, 2010, and a hearing was held before Administrative Law Judge Kathleen S. Molinar on January 5, 2011. [Tr. 29-51]  On January 21, 2011, ALJ Molinar rendered an unfavorable decision, denying benefits. [Tr.15-25]

Zeno sought review with the Appeals Council, which, after receiving additional evidence, denied his request on April 27, 2012. [Tr. 5-10] Thus, the ALJ's denial of benefits to Zeno is the "final" decision of the Commissioner. This appeal timely followed,[2] with Zeno seeking judicial review of the decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1]  The Commissioner has filed an opposition. [Rec. Doc. 13]

## APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which he was a party may obtain a review of the decision by a civil action. 42 U.S.C. 405(g). This court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is

---

[2]An extension of time for filing a civil action was sought by the claimant and granted. [Tr. 1-4]

entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible, and any findings of fact by the ALJ that are supported by substantial evidence are conclusive and must be affirmed. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel,* 239 F.3d at 704. Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole. *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the ALJ, even if the evidence weighs against the ALJ's decision. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1)

objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the ALJ, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

In determining whether a claimant is disabled, the ALJ uses a five-step sequential process, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the ALJ determines that the claimant is disabled at any step, the analysis

ends.  20 C.F.R. § 404.1520(a)(4). If the ALJ cannot make a determination at any

step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a

claim for disability benefits in the third step, the medical evidence of the

claimant's impairment is compared to a list of impairments presumed severe

enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110

S.Ct. 885, 107 L.Ed.2d 967(1990).  If the claimant is not actually working and his

impairments match or are equivalent to one of the listed impairments, the ALJ is

required to "consider the combined effect of all of the individual's impairments

without regard to whether any such impairment, if considered separately, would be

of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the

combined impairments are compared to the listed impairment most similar to the

claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It

is the claimant's burden to prove at step three that his impairment or combination

of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For

a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must

meet all of the specified medical criteria.  An impairment that manifests only some

of the specified criteria, no matter how severe, does not qualify. *Id.*  Ultimately,

the question of equivalence is an issue  reserved for the ALJ.  *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993).

Before going from step three to step four, the ALJ assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). This is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

David Jermaine Zeno can speak, read, write, and understand English.  He describes the conditions limiting his ability to work to include seizures, high blood pressure, Kowasaki disease of the heart, and brain damage. [Tr. 144-45] He alleges he stopped working September 7, 2005 due to those conditions. He dresses himself, takes medicine, and sits and watches television most of the day.  He goes out to pay bills or grocery shop; he takes naps, and occasionally cares for his son with his grandmother's help. [Tr. 157-58] He goes places with friends and family. He must be reminded to take his medication and to keep doctors' appointments.

Medical treatment documented in the record spans the time period from July, 2008 through December, 2010. In July, 2008, Zeno was seen in the Emergency Room of Southwest Medical Center after an auto accident. Documents

reference a craniotomy and internal bleeding. [Tr. 206-210] In December, 2008, he was seen at Our Lady of Lourdes Hospital (Dr. Charles Burness) after reports he suffered a grand mal seizure.  His mother reported he had never followed up with a regular doctor, but that he had his prescriptions for seizure medications filled through emergency room visits in the recent years.  She acknowledged Zeno may have skipped doses of his medicine. [Tr. 187] On examination, Zeno was noted to have been able to give good history; he had no focal motor/sensory deficits; his cranial nerves were intact, and he was in no acute distress.  He had full range of motion in all joints, a normal eye exam, regular heart rate/rhythm, no abnormal murmurs, and clear lungs.  He was diagnosed with grand mal seizure, with medical noncompliance. [Tr. 188-189] In January, 2009, Zeno returned to the emergency room of Southwest Medical Center with the report of a seizure that morning.  His nursing assessment was essentially normal.  He was instructed to take his medications as prescribed and to follow up with his regular doctor. [Tr. 192-198] A CT of the head/brain was ordered, and results were grossly unremarkable. [Tr. 200, 325]

On February 14, 2009, Zeno was admitted to University Medical Center for seizure disorder and altered mental state, to rule out bacterial meningitis. [Tr. 302-303] Meningitis was ruled out.  Zeno was agitated and wanted to leave, disclosing

that he was not taking his Dilantin.  A drug screen was positive for marijuana. [Tr. 304] Zeno left the hospital against medical advice. [Tr. 305] He returned to the University Medical Center ER with headaches on February 18. 2009, denying any seizure activity since a spinal tap.  Diagnosis was noted to be headache and cocaine abuse after a positive drug screen. [Tr. 278, 280]

In April, 2009, Zeno visited the ER at University Medical Center, with reports that he had suffered a seizure in jail. [Tr. 269-271] Still incarcerated in June, 2009, he was hospitalized overnight for phenytoin (Dilantin) toxicity.  He denied distress and did not know when he had last had a seizure. [Tr. 285, 291-92] In mid-June, 2009, Zeno again visited the ER from jail, reporting that he had had three seizures and had missed doses of his medication. [Tr. 260-68]

On November 8, 2009, Zeno reported in the emergency room that he had suffered a seizure while driving and had been off his medications several days.  He reported his last seizure had been two months before. [Tr. 254-56] The next day, Zeno was admitted into an Adult Drug Court program. [Tr. 180]

The claimant was seen in the University Medical Center internal medicine clinic on November 17, 2009.  He gave a history of several seizures while incarcerated when he had no medications.  He was referred to the UMC neurology clinic. [Tr. 251-53] He visited the emergency room again in late November and on

-9-

January 24, 2010, following reported mild seizures. [Tr. 231-32, 242-250] He returned to the internal medicine clinic in March, 2010 for routine followup, reporting no seizure in the past month. [Tr. 227] His medications were adjusted at his request.  By March 13, 2010, Zeno returned to the emergency room with his grandfather, who reported he had had four seizures that morning, lasting 1-2 minutes. [Tr. 213]

On April 14, 2010, Zeno was seen in the ER of Regional Medical Center of Acadiana, reporting he had suffered a seizure while driving.  His last seizure had been one month before.  He was noted to have a normal heart exam, and his neurological exam was also normal.  He was given a two day excuse from work and urged to follow up with a neurologist. [Tr. 399-409] During May, 2010, Zeno visited the ER of Regional Medical Center of Acadiana twice: once for a sprained ankle and once for complaints of two seizures in one day after missed doses of medications. [Tr. 374-76, 388-98]

In late June, 2010, Zeno was seen in the University Medical Center ER, reporting someone had sprayed him with pepper spray and hit him in the head with a bat.  He had not lost consciousness, but he had a headache and was dazed. Staples were removed July 5, 2010. [Tr. 337-342, 363]

-10-

On August 9, 2010, the claimant was seen in the internal medicine clinic at University Medical Center for a routine visit.  He reported a recent seizure July 31, and records indicate his hypertension was controlled. [Tr. 333-335] Zeno was next seen in the ER of Lourdes Hospital after a minor auto accident.  He reported he had a seizure and went off the road while driving.  Paramedic records indicated there was no evidence of seizure activity and all systems were negative. [Tr. 346-47]

Records from Regional Medical Center of Acadiana emergency room from December 12, 2010 indicated that Zeno reported two seizures that day, with reference to missed recent doses of medicine. [Tr. 350] The next, and last  medical record in the file, entered after the administrative hearing, is from October 4, 2011 which is a referral order for a neurology consult at University Medical Center for Zeno's history of grand mal seizures. [Tr. 415]

*The Administrative Hearing:*

The administrative hearing was conducted on January 5, 2011, and the claimant appeared in person, represented by counsel. [Tr. 29-51]  At the start of the hearing, the ALJ admitted proposed exhibits 1A through 5F into evidence. [Tr. 31]    Zeno testified that he was twenty-one years old and resides in a mobile home with his grandparents. [Tr. 32-33] He has never married, and he has a one

-11-

year old child.  He has an eighth grade education with no other formal training.

He reported that he has trouble with reading, but he has held a driver's license

since age 16. [Tr. 34] He has a minimal work history with a two week stint as a

cook at a fried chicken restaurant at age 16.  He reported he became ill with

seizures and left that job, and he has not worked since. [Tr. 35]

In response to questions from the ALJ, Zeno indicated that he gets seizures

about twice a week, and he does not know when it will happen.  He does not know

what happens during a seizure, but he is told he sometimes bites his tongue, and

uses the bathroom on himself. [Tr. 35] He has headaches after seizures, and he

forgets things.  It takes about two hours to recover after a seizure, and he sleeps

during that time. [Tr. 36] He has been diagnosed with hypertension, which causes

him to get weak. [Tr. 36, 47]

On an average day, Zeno attends drug court classes.  He does not do

shopping.  He can stand and sit without difficulty, and he can walk about 20-25

minutes before needing to take a break. He can stoop without any problems and he

can use his hands without difficulty.  He gets along fine with everyone. [Tr. 43-44]

He cannot carry a bag of groceries; he believes he could lift/carry 10-15 pounds at

the most. [Tr. 38] He believes he would have back problems if he lifted anything

heavier.  He indicated he had a hernia surgery before, but he could not describe

-12-

where the incision was located. [Tr. 38] He goes to church with his grandfather every Sunday, staying through the entire service.  He does no yard work or housework, cooking or cleaning.  His grandparents do those things. [Tr. 39] He cannot use computers and he is bothered by the heat. [Tr. 44] He can take care of his personal hygiene without a problem.  Strong medicine makes him drowsy and sleepy. [Tr. 39] His grandmother feeds him breakfast before she leaves home, and he sleeps until 11:30 a.m.  In the afternoon, he goes to his classes and goes back to bed.  He is able to sleep all night unless he has a seizure.  He has no hobbies. [Tr. 40]

Zeno testified that he has diabetes and must watch what he eats.  However, he takes no medication for diabetes, and he does not check his blood sugar at home although he has been trying to get into a diabetes clinic. [Tr. 40]  He indicated he was hospitalized overnight recently, and he understands he needs to see a neurologist, but he cannot get in to see one. [Tr. 42] He has no problem getting his seizure and blood pressure medications.  He testified he is always able to take his seizure medicine when he is supposed to. [Tr. 43]

In response to questions from his attorney, Zeno indicated he has trouble with math, and he cannot make correct change. He has been trying to see a neurologist for about six months.  His grandfather does all yard work because he

-13-

cannot get overheated.  He described himself as "very ill." [Tr. 45-47] He no longer drives because he had an accident recently, hitting a telephone pole. [Tr. 47-48]

Also testifying at the hearing was vocational expert Harris Rowzie, who responded to questions from the ALJ.  He acknowledged his familiarity with Social Security's definitions of sedentary, light, medium, heavy, unskilled, semiskilled and skilled work. [Tr. 49]  He testified that he had studied the claimant's vocational history and heard his testimony, and he opined that Zeno does not have employment at the substantial gainful activity (SGA)  level. [Tr. 49] Therefore, he is not considered to have any type of past relevant work.  The VE was asked to assume a hypothetical 21 year old gentleman with an eighth grade education and no past relevant work, and a seizure disorder requiring standard seizure precautions (no heights, no moving machinery, no work around hazardous materials, no sharp objects, no open heat sources, no climbing or balancing, only rare to occasional computer monitor use).  The VE opined that there are jobs available in the national and state economies which fit the hypothetical, including the examples of housekeeping cleaner (light with an SVP of 2[3] of which there are

---

[3]This number refers to the specific vocational preparation (SVP) required for the occupation. It is the amount of lapsed time required by a typical worker to develop the facility needed for average performance in the job.  An SVP of 2 represents a learning period of anything beyond a short demonstration up to and including 1 month. It is considered unskilled work, defined as work that

916,000 jobs in the U.S. and 14,400 in La.), janitor (medium with an SVP of 2 of which there are 2,100,000 jobs in the U.S. and 28,500 in La.), and router (light with an SVP of 2 of which there are 3,000,000 jobs in the U.S. and 38,000 in La.). Such jobs generally permit three daily breaks. [Tr. 49-50] If the hypothetical individual needs more breaks because of seizure complications, he would be unemployable. [Tr. 50] No questions were asked of the VE by Zeno's attorney. [Tr. 50]

*The Determination of the ALJ:*

The record  demonstrates that the ALJ followed the requisite five step sequence and she considered the entire record.  The ALJ found, at step one, that the claimant has not engaged in substantial gainful activity since January 27, 2010, the application date. [Tr. 20]  At step two, the ALJ determined that Zeno has the severe impairments of hypertension and seizure disorder (20 CFR 416.920(c)), which impairments cause more than a minimal functional limitation. [Tr. 20]  This finding is supported by the record and has not been challenged by the claimant.

At step three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals one of

---

"needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR 416.968(a).

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR

416.920(d), 416.925, and 416.926).  The determination was explained to be based

on the ALJ's comparison of the objective evidence with criteria specified in the

Listings of Impairments.  The ALJ also noted that no physician has found that the

claimant's impairments equal any of the listed impairments, and State Agency

medical consultants who have evaluated the claimant's impairments have reached

the same conclusion.  The claimant has not challenged this finding, which is

supported by the evidence.

A person with epilepsy is not *per se* disabled within the scope of the Social

Security Act.  One criterion required to establish that epilepsy is disabling is that

seizures must occur more frequently than once a month. *See* § 11.02, 20 CFR 404,

Subpt. P, App.1.  However, even were it assumed *arguendo* that Zeno suffered

seizures more frequently than once a month, that fact standing alone would not

establish error on the part of the Commissioner, since in order to qualify as a

disabling impairment, his condition must also be non-responsive to medication.

Before such a finding would be appropriate it must be shown that the claimant is

following the doctor's directions in taking the prescribed medication. An

applicant's claim may be denied when it is determined that a prescribed medication

was not taken as directed. *See* § 11.00, 20 CFR 404, Subpt. P, App.1*; Brown v.*

-16-

*Bowen,* 845 F.2d 1211, 1214–15 (3rd Cir.1988). *Carr v. Apfel*  133 F.Supp.2d 476,

479-481 (N.D.Tex.,2001).

    The ALJ found that the claimant has the residual functional capacity (RFC)

to perform a full range of work at all exertional levels, but with the following

nonexertional limitations: he cannot work in the presence of heights, dangerous

machinery, sharp objects, or excessive heat or perform work involving climbing,

or more than rare/occasional use of computer monitors. [Tr. 20] In arriving at the

RFC, the ALJ acknowledged she considered all of the claimant's symptoms and

the extent to which they can reasonably be accepted as consistent with the

objective medical evidence and other evidence, as required by 20 CFR 416.929

and SSRs 96-4p and 96-7p.  She also considered opinion evidence in accordance

with 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.  She  followed the

required two-step process to determine (1) whether there is an underlying

medically determinable physical or mental impairment which could reasonably be

expected to produce the claimant's symptoms, and (2) whether the claimant's

reports concerning the intensity, persistence and limiting effects of his symptoms

are credible and substantiated by the objective medical record.  The ALJ cited  the

hearing testimony of the claimant that he has seizures twice a week, requiring two

hours to recover from each.  He can carry 10-15 pounds before experiencing back

problems; he can stand/walk for 20-25 minutes and can sit for an unlimited

duration.  He could bend, stoop, and use his hands to pick up small objects.  He

reported sensitivity to high temperatures and too much light.  However, the ALJ

also cited medical records which specifically noted no heat or cold intolerance,

normal blood pressure and medical noncompliance, along with driving-related

accidents reported by the claimant, who represented he could not drive. The ALJ

specifically referenced medical record entries where the claimant reported he had

been seizure free for at least a month at a time. [Tr. 22]  The ALJ also noted the

claimant's failure to obtain neurological treatment which, given Louisiana's

system of charity hospitals, raises the question of the claimant's credibility. [Tr.

22]

          After reviewing the entire medical record submitted, the ALJ gave more

narrow scrutiny to records from the only time period applicable for disability, if

found, from January 27,2010 to the hearing date.  In that period, the ALJ noted

Zeno's report on March 1, 2010 that he had experienced no seizure activity in the

past month.  That visit was followed on March 13, 2010 with a report of 4 seizures

lasting 1-2 minutes apiece. [Tr. 22] Finally, the ALJ considered the determination

of Disability Determination Services during the relevant period, that Zeno could

perform work, but that he is precluded from working around dangerous machines,

climbing ladders, or working in high places. [Tr. 23] After her independent review of the record and testimony from the claimant, the ALJ concurred and added the additional restrictions that Zeno avoid excessive heat, the presence of sharp objects, and that he work only rarely to occasionally with computer monitors.  The ALJ further concluded that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC. [Tr. 23] In arriving at that conclusion, the ALJ made specific references to the medical record and the representations contained therein which contradict the claimant's hearing testimony.   This finding is challenged by the claimant.

At step four, the ALJ found that Zeno has no past relevant work. Referencing the claimant's age, education, work experience and the RFC, in conjunction with the Medical-Vocational Guidelines, and with assistance from a vocational expert, the ALJ found, at step five, that there are jobs that exist in significant numbers in the national economy that the claimant can perform, and that Zeno is capable of making a successful adjustment to that work.  In arriving at those conclusions, the ALJ found that the claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations, which she

described in arriving at the RFC.  Posing hypothetical questions to the VE, incorporating the elements of the RFC, the ALJ learned of the existence of jobs in the national economy which Zeno could perform, including that of housekeeping cleaner, janitor, and router. [Tr. 24] The ALJ found the expert's testimony to be consistent with information contained in the Dictionary of Occupational Titles, per SSR 00-4p. [Tr. 24] Based on the testimony of the vocational expert, the ALJ made a finding of 'not disabled' relative to the time period at issue in this case. [Tr. 24]  This finding is challenged by the claimant.

## ASSIGNMENT OF ERRORS

The claimant asserts generally that the final decision of the Commissioner is not supported by substantial evidence and contains error of law.  Specifically, Zeno asserts (1) the ALJ's hypothetical question to the vocational expert was defective; (2) the ALJ improperly relied on Grid Rule 204.00, rather than Grid Rules 203.00 and 202.00; and (3) The VE's testimony regarding the presence of alternate work is defective.

### I.  The hypothetical questions posed to the VE reasonably incorporated the disabilities recognized by the ALJ.

The claimant asserts that the ALJ's hypothetical questions posed to the vocational expert at the administrative hearing were defective in that they made no

reference to the severe impairment of hypertension, recognized at step two.  In this assignment of error, the claimant essentially challenges the RFC as formulated by the ALJ, suggesting that additional limitations should have been included in the RFC to accommodate her hypertension diagnosis.

It is clear from the specific references in the decision that the ALJ did consider the claimant's hypertension diagnosis and treatment in arriving at the RFC and in reaching her decision.  She made specific reference to the fact that Zeno's hypertension was "controlled" during the time period at issue [Tr. 229, 335] and that multiple blood pressure readings in the record were normal [Tr. 355-56, 367, 369, 378, 408].  There is no indication in the record that any physician restricted Zeno's activity relative to the hypertension diagnosis or made notations of alarming findings in cardiac examinations during the relevant time period.  Further,  Zeno has offered no hypertension-related restrictions which should have been considered which were not incorporated into the RFC and thereby into the hypothetical questions to the VE. The only hypertension-related symptom described by Zeno in his testimony was dizziness. The record demonstrates that the ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. [Tr. 20]

-21-

On this record, and consistent with the Fifth Circuit's findings in *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) and *Bowling v. Shalala*, 36 F.3d 431, 436(5th Cir. 1994), the undersigned concludes that the first hypothetical question posed to the VE reasonably incorporated the disabilities recognized by the ALJ.  Even though the ALJ incorporated the 'no balancing' limitation in her hypothetical question to the VE, but did not specifically reference balancing in the ultimate RFC conclusion, that addition does not change the fact that the ultimate RFC limitations were clearly stated in the hypothetical, and the job illustrations offered by the VE fit within the RFC.  Only the question which posed the hypothetical containing the elements of the ALJ-determined RFC needed to be asked of the VE, and the ALJ is not bound by vocational expert testimony which is based upon hypothetical assumptions that are rejected by the ALJ. See *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). Thus, it is not significant that the ALJ rejected the VE's testimony regarding the expanded hypothetical which included extraordinary break limitations, since those limitations were outside the RFC.  *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)*;  Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

Further, Zeno's attorney had the opportunity to correct any perceived defect in the hypothetical by questioning the VE regarding additional limitations, but no such

action was taken.  Procedural  perfection  in administrative proceedings is not required, and a judgment will not be vacated unless a party's substantial rights have been affected.  *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  Furthermore, procedural improprieties constitute a basis for remand only when the improprieties cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  This Court finds no such doubt in the instant case.

## II.  Zeno's argument that the ALJ committed reversible error by improperly relying on Grid Rule 204.00, rather than Grid Rules 203.00 and 202.00 is not supported in the record.

In arriving at the RFC, the ALJ determined that Zeno has the capacity to perform "a full range of work at all exertional levels" with certain nonexertional limitations. [Tr. 20] In the decision, the ALJ explained her Step Five analysis to include consideration of Zeno's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines.  The decision notes that the medical-vocational rules are used as a framework for decisionmaking when non-exertional limitations are involved.  The ALJ acknowledged that Zeno's ability to perform work at all exertional levels has been compromised by nonexertional limitations. [Tr. 24] Having recognized that compromise, the ALJ turned to the vocational expert to determine the extent to which the identified limitations erode the

occupational base of unskilled work at all exertional levels. [Tr. 24] She relied on the testimony of the VE to reach the final Step Five conclusion that Zeno is capable of making a successful adjustment to other work existing in significant numbers in the national economy. [Tr. 24]

The claimant's general assertions regarding the ALJ's use of the grids are not only inaccurate, they raise no reversible error.  The Commissioner may meet her burden at step five either by reference to the Medical-Vocational Guidelines of the regulations,[4] or by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296,1304 (5th Cir. 1987).  *See also Goin v. Astrue*, 2013 WL 1130050(N.D.Tex., 2013). An ALJ is permitted to rely on the expertise of a vocational expert to determine whether the plaintiff's residual work skills can be used in other occupations and in identifying the specific occupations in which those skills may be used. 20 C.F.R. § 404.1566(e)  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  While it is true that the ALJ in this case used the medical-vocational rules "as a framework" for decision making, it is clear from the decision

---

[4] The Guidelines, also known as the "Grids," are found at 20 C.F.R. § 404, Sub-part P, Appendix 2.

that she reached her ultimate conclusion regarding disability "[B]ased on the testimony of the vocational expert." [Tr. 24]

The ALJ found that Zeno could perform a full range of work at all exertional levels.  That finding is supported by substantial evidence in the record and by the absence of any contrary medical restrictions in the record. Even if Zeno's argument was accepted that Grid Rule Sections 203.00 (maximum sustained work capability for medium work) or 202.00 (maximum sustained work capability for light work) should have been applied by the ALJ rather than 204.00[5] (maximum sustained work capability for heavy work), the record still supports a finding of no disability based on the testimony of the VE, who offered only examples of light/medium occupations, and  upon whom the ALJ could reasonably rely. Any alleged error by the ALJ as described is harmless and does not warrant reversal of the disability determination. *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir.2003).

### III.  The VE's testimony regarding the presence of alternate work does not render the Step Five analysis defective.

Zeno next argues that, contrary to the declaration in the decision document [Tr. 24], the ALJ failed in her duty to comply with provisions of SSR 00-4p, which

---

[5]Per the Grid Rule 204.00, "The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well...."

requires an ALJ who takes testimony from a VE about the requirements of a particular job to determine whether that testimony is consistent with the Dictionary of Occupational Titles.  Specifically, Zeno argues that the VE's testimony that the work of a housekeeping cleaner is classified as light work, but it includes duties which are prohibited to the claimant, namely "balancing." [In fact, the ALJ ultimately rejected the balancing restriction in arriving at the RFC.] The occupation of janitor is also alleged to include duties exceeding the limitations set forth in the ALJ's hypothetical questions to the VE.  Finally, the claimant asserts that the occupation of router calls for educational development beyond that assigned to the claimant.  Citing to cases from other circuits, Zeno urges that the ALJ should have asked more detailed questions of the VE to determine whether any possible conflict exists between the VE's testimony and the DOT entries for those positions.

The Fifth Circuit takes a less demanding view.  In *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), the court surveyed the circuits relative to the recognized conflict on the issue of whether an ALJ may rely upon the testimony of a VE when that expert's testimony is either in conflict with or creates a conflict in the evidence in light of DOT provisions.  Some Circuits have taken the position that the DOT is not controlling and that the ALJ may rely upon the testimony of a

vocational expert, even when it is inconsistent with the DOT.  *See Mont v. Chater*,

No. 96–2896, 1997 WL 201626 (7th Cir. Apr.17, 1997) (unpublished) (citing

*Conn v. Secretary of Health & Human Servs*., 51 F.3d 607 (6th Cir.1995)).  Other

Circuits hold that an ALJ may not rely upon the testimony of a VE if the expert's

testimony conflicts with the DOT.  *See Smith v. Shalala*, 46 F.3d 45(8th Cir.1995).

The Fifth Circuit has adopted the majority view:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. As the facts of this case demonstrate, all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey v. Apfel*  230 F.3d 131, 146 -147 (5th Cir. 2000).

The regulations establish that work exists in the national economy "when

there is a significant number of jobs (in one or more occupations) having

requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 CFR 416.966(b).  In this case, in response to the ALJ's hypothetical questions, the VE described such positions, each of which was described to fall into the unskilled, light/medium categories and accommodating of the additional nonexertional limitations assigned by the ALJ.  Each of the suggested positions were identified to have the SVP of 2, considered unskilled work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR 416.968(a). The VE provided the numbers of those jobs in the national and Louisiana economies, meeting the step five burden.  The claimant's attorney  asked no questions of the VE at the administrative hearing, offering no challenge to the testimony of whatsoever kind. Zeno has thus  offered no evidence to rebut the step five finding, as he must. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.  Therefore, the Court finds the ALJ's methods and step five conclusions are supported by substantial evidence.

### CONCLUSION AND RECOMMENDATION

It is well-established that "the ALJ has sole responsibility for determining a claimant's disability status."  *Martinez*, 64 F.3d at 176, *citing Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). As discussed above, this Court's standard of

review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990).   In this case, the record demonstrates that the ALJ engaged all of the relevant evidence, made credibility determinations, and explained reasons for discounting some of the evidence in the record.  Although Mr. Zeno disagrees with the ALJ's assessment of his impairments and his ability to be employed, it is not the function of the undersigned to "reweigh the evidence in the record." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. Accordingly,

**IT IS RECOMMENDED** that the decision of the Commissioner be  AFFIRMED.


Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 14TH day of March, 2014.

_____
Patrick J. Hanna
United States Magistrate Judge

-30-